IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Anne Branch, Kathleen Guillen, Gregory Branch, Elizabeth Baptista, and Andre Catnott,<br><br>Plaintiffs,<br><br>vs.<br><br>SVC-West, LLC,<br><br>Defendant. | Case No.: 4:26-cv-01374-JD<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on Defendant SVC-West, LLC's ("SVC") Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration (DE 4), and Plaintiffs' Motion for Partial Summary Judgment (DE 10). The arbitration issues are fully briefed. (DE 6; DE 7.) The Court has also received SVC's supplemental jurisdictional statement. (DE 12.)

For the reasons below, the Court concludes that the parties entered into a valid arbitration agreement encompassing Plaintiffs' claims, but that SVC has not established entitlement to the relief requested under §§ 3 and 4 of the Federal Arbitration Act. SVC's alternative request under § 5 is denied without prejudice. The Rule 12(b)(6) portion of DE 4 and Plaintiffs' Motion for Partial Summary Judgment (DE 10) remain held in abeyance pending expiration of the time to appeal the Court's §§ 3 and 4 rulings or further order of the Court.

# I. BACKGROUND

The following facts are taken from Plaintiffs' Complaint (DE 1-1) and the timeshare documents attached to SVC's Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration. (DE 4; DE 4-1.) The Court also considers the two letters from the American Arbitration Association for the purposes below. (DE 6-1; DE 7-1.)

## A. Factual Background

This action arises from Plaintiffs' August 31, 2025, purchase of several timeshare interests and membership in Defendant's Shell Owners Club for a total value of $57,906.20 ("Contract"). (DE 1-1 ¶¶ 6–13.) Plaintiffs allege that Defendant's agents misrepresented their rescission rights and used transaction documents that did not conform to the South Carolina Timeshare Act. (*Id.* ¶¶ 9–10, 21–29.) The Contract contains an arbitration provision in paragraph 29 ("Arbitration Provision"). (DE 4-1 at 15–17.) The Arbitration Provision states that the FAA governs and identifies the American Arbitration Association ("AAA") and JAMS as arbitration administrators. (*Id.* at 15–17.) It also permits another administrator or arbitrator chosen by agreement of the parties and assigns disputes about the validity or enforceability of the Contract as a whole to the arbitrator while reserving disputes about the Arbitration Provision itself for a court. (*Id.*)

On January 15, 2026, Plaintiffs filed an arbitration demand with AAA pursuant to paragraph 29. (DE 1-1 ¶ 18; DE 6 at 1–2.) On February 23, 2026, AAA declined to administer the arbitration. Its letter stated that, "[b]efore the filing of this arbitration, SVC-West, LLC failed to comply" with AAA policies governing consumer

claims; AAA therefore "must decline to administer this claim" and administratively closed the file. (DE 6-1 at 1.) AAA also said that a previously declined claimant "may proceed in the appropriate court" and that AAA would administer the previously declined matter again only if, "at the Claimant's sole discretion," the claimant chose to refile. (*Id.*)

Plaintiffs filed their Complaint in the Horry County Court of Common Pleas on February 25, 2026, asserting claims under the South Carolina Timeshare Act and SCUTPA. (DE 1-1 ¶¶ 21–37.) SVC removed the action and moved to dismiss or, alternatively, to stay and compel arbitration. (DE 1; DE 4.)

After SVC filed the present motion, it registered its consumer arbitration clause with AAA's Consumer Clause Registry. On May 20, 2026, AAA told SVC that, "under current AAA policy," it was "prepared to administer consumer-related disputes filed pursuant to this clause." (DE 7-1 at 2.) AAA conditioned that willingness on SVC's continued compliance with the Consumer Arbitration Rules and Consumer Due Process Protocol and reserved the right to decline future administration. (*Id.* at 2–3.) AAA also expressly stated that its letter "is not a contract, promise, and/or agreement to provide any services[.]" (*Id.* at 3.) The May 20 letter did not reopen Plaintiffs' previously closed arbitration or state that AAA had accepted Plaintiffs' particular dispute.

**B. Procedural Background**

Plaintiffs filed this action in the Horry County Court of Common Pleas on February 25, 2026, asserting claims under the South Carolina Vacation Time Sharing

Plans Act ("Timeshare Act") and the South Carolina Unfair Trade Practices Act ("SCUTPA"). (DE 1-1 ¶¶ 21–37.) SVC removed the action on April 1, 2026, within thirty days after service of the Complaint. (DE 1.) The Court later directed SVC to supplement its citizenship allegations and, after reviewing the supplemental jurisdictional statement at DE 12, is satisfied that subject-matter jurisdiction exists under 28 U.S.C. § 1332.[1]

SVC filed DE 4 on April 8, 2026. Plaintiffs filed their Response on June 10, 2026. (DE 6.) SVC replied on June 17, 2026. (DE 7.) Although SVC objected to the timeliness of Plaintiffs' Response, the Court subsequently deemed DE 6 timely filed. (DE 11.) Plaintiffs thereafter filed a Motion for Partial Summary Judgment on July 20, 2026, contending that the Contract is void under the Timeshare Act. (DE 10.)

## II. LEGAL STANDARD

The FAA governs SVC's request to compel arbitration. Section 2 provides that a written arbitration provision in a contract "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable," subject to generally applicable grounds for revocation of a contract. 9 U.S.C. § 2. "Arbitration is a matter of contract,"

---

[1] The Court had directed SVC to trace its citizenship through each layer of LLC ownership. (DE 11.) SVC thereafter represented that SVC-West, LLC is owned by Shell Vacations, LLC, which is wholly owned by Wyndham Vacation Resorts, Inc., a Delaware corporation with its principal place of business in Florida, and that this ownership structure was unchanged when the state action was commenced and when the case was removed. (DE 12 at 1.) SVC is therefore a citizen of Delaware and Florida for diversity purposes. Plaintiffs are citizens of South Carolina. (DE 1 at 2.) The amount in controversy also exceeds $75,000: the Notice of Removal identifies a $57,906.20 transaction and relies on Plaintiffs' requests for, among other relief, treble damages and attorney's fees. (DE 1 at 2; DE 1-1, Prayer for Relief.) The Court is therefore satisfied that subject-matter jurisdiction exists under 28 U.S.C. § 1332.

*Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020), and courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018).

In this Circuit, a party seeking to compel arbitration must establish "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). The Fourth Circuit recently reiterated those requirements and explained that, when the statutory requirements for compelling arbitration are satisfied, a court "has no choice but to grant a motion to compel." *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 726 (4th Cir. 2025) (quoting *Adkins*, 303 F.3d at 500).

Formation and the statutory availability of judicial relief are nevertheless distinct inquiries. Section 3 requires a stay of litigation involving an issue referable to arbitration only "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 4, in turn, authorizes relief to "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" and directs arbitration "in the manner provided for in" the parties' agreement. 9 U.S.C. § 4. Sections 3 and 4 therefore impose statutory conditions in addition to the existence of a valid arbitration agreement.

Section 5 addresses a different subject. When the parties' agreed method for naming an arbitrator fails, a party does not avail itself of that method, or "for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators," a court may designate and appoint an arbitrator. 9 U.S.C. § 5. Finally, when a challenge is directed to the validity of the contract as a whole rather than specifically to the arbitration provision, that issue ordinarily is for the arbitrator in the first instance. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

## III. DISCUSSION

SVC asks the Court to compel arbitration and stay this action while arbitration proceeds. (DE 4.) It also seeks dismissal under Rule 12(b)(6). (*Id.*) Plaintiffs oppose compelled arbitration and separately seek partial summary judgment on the validity of the underlying Contract. (DE 6; DE 10.) Because the arbitration motion concerns the forum in which the underlying transaction-related issues must be resolved, the Court addresses the arbitration-related requests first.

### A. The First Three *Adkins* Requirements Are Satisfied

SVC contends that Plaintiffs entered a valid written arbitration agreement, that paragraph 29 covers both statutory claims, and that the transaction affects interstate commerce. (DE 4 at 4–9.) Plaintiffs do not materially dispute formation or scope in their opposition. Their arbitration argument instead rests on AAA's refusal to administer the proceeding because of SVC's noncompliance. (DE 6 at 2–4.) SVC accordingly argues in reply that Plaintiffs' objection concerns administration of the arbitration, not the validity or scope of paragraph 29. (DE 7 at 2–4.)

The Court agrees with SVC as to the first three *Adkins* requirements. A dispute plainly exists. Plaintiffs executed a written Contract containing a conspicuous arbitration notice and a detailed arbitration provision. (DE 4-1 at 2, 15–17.) Paragraph 29 broadly defines covered "Claims" to include disputes arising from the Agreement, membership, "marketing or sales solicitations, representations, advertisements, promotions, or disclosures," and disputes "based on statute, regulation, ordinance, constitution, Uniform Commercial Code, equity or common law." (*Id.* at 15.) Plaintiffs' Timeshare Act and SCUTPA claims arise from alleged sales representations, rescission disclosures, and allegedly nonconforming transaction documents associated with the transaction. (DE 1-1 ¶¶ 21–37.) Those claims fall within paragraph 29.

The interstate-commerce requirement is also satisfied. Paragraph 29 expressly provides that "[t]his Agreement involves interstate commerce" and that the FAA governs the Arbitration Provision. (DE 4-1 at 17.) The third *Adkins* requirement is therefore satisfied.

Plaintiffs' contention that the underlying transaction is void or voidable under South Carolina law does not change that conclusion. Where the "challenge is to the contract as a whole," rather than specifically to the arbitration provision, "the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445–46. Paragraph 29 similarly assigns challenges to the validity or enforceability of the Agreement as a whole to the arbitrator. (DE 4-1 at 16.) The Court therefore does not decide at this stage the contract-validity issue raised in DE 10.

Paragraph 29 materially strengthens SVC's contractual argument in another respect. Under the heading "Process," it provides that "[t]he complaining Party may commence a lawsuit or an arbitration," and "[i]f one Party begins or threatens a lawsuit, the other Party can demand arbitration." (DE 4-1 at 17.) The provision further states: "This demand can be made in court papers, such as a motion to compel arbitration." (*Id.*) SVC is therefore correct that paragraph 29 permits it contractually to elect arbitration after Plaintiffs commence litigation. The Court does not hold otherwise.

But SVC's contractual ability to demand arbitration does not eliminate the statutory conditions Congress placed on obtaining judicial relief under §§ 3 and 4. The question presented is therefore not whether paragraph 29 permits SVC to demand arbitration—it does—but whether SVC has established that § 3 requires a stay and § 4 authorizes an order compelling Plaintiffs to return to arbitration after their first contractually authorized arbitration could not proceed because of SVC's noncompliance.

**B. SVC Has Not Established Entitlement to a Stay Under § 3**

SVC requests, at minimum, a stay pending arbitration. (DE 4 at 12.) Plaintiffs respond that AAA declined the arbitration because SVC had failed to comply with AAA's consumer policies and that AAA expressly authorized the dispute to proceed in court. (DE 6 at 2–4; DE 6-1 at 1.) Plaintiffs argue that this result is consistent with *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355 (11th Cir. 2023). SVC answers that it has since corrected the registration issue and that *Bedgood* is both

nonbinding and distinguishable because the defendant there had not cured its noncompliance. (DE 7 at 3–4.)

Section 3 resolves the request for a stay by its own terms. Although a court ordinarily "shall" stay an action involving an arbitrable issue, that command applies only "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. AAA's administrative determination that SVC failed to comply with its policies does not itself establish statutory default. The Court must make that determination. But AAA's determination and the circumstances surrounding Plaintiffs' failed arbitration are relevant evidence.

*Bedgood* addressed materially similar circumstances. There, AAA rejected consumers' arbitration demands because the timeshare company had "failed to comply with the AAA's policies." 88 F.4th at 1360–61. The Eleventh Circuit emphasized that AAA's determination "wasn't binding on the district court" and that the court remained free to "discredit[] or ignore[] it." *Id.* at 1366. But the court held that the district court did not err in relying on AAA's determination to find statutory default, "especially" because the company had "made no effort to investigate—let alone remedy—its noncompliance before the AAA." *Id.*

SVC correctly identifies an important distinction: unlike the defendant in *Bedgood*, it later brought its clause into compliance with AAA's registry requirements. (DE 7 at 3–4; DE 7-1 at 2.) That distinction, however, was addressed in *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, 137 F.4th 1268 (11th Cir. 2025). There, AAA declined a consumer arbitration because the business had

failed to register its clause and pay the required fee. *Id.* at 1271–72. The business then corrected the problem during the litigation and obtained AAA approval before moving to compel arbitration. *Id.* at 1272. The Eleventh Circuit nevertheless affirmed the finding of § 3 default because, when litigation began, the business "had not yet attempted to remedy its noncompliance with the AAA" and therefore "acted inconsistently with its arbitration right by not trying to remedy the barrier to arbitration that it had caused." *Id.* at 1274.

The court rejected the argument that subsequent compliance changed the analysis. It stated that "[c]onduct during the litigation cannot cure" the business's prior noncompliance and summarized its holding: "Put simply, post-filing conduct cannot cure the prior noncompliance." *Id.* at 1276.

The chronology here is materially similar and, in one respect, less favorable to SVC. Plaintiffs invoked AAA on January 15, 2026. (DE 1-1 ¶ 18; DE 6 at 1–2.) On February 23, AAA declined the matter because "[b]efore the filing of this arbitration, SVC-West, LLC failed to comply" with AAA's consumer policies, administratively closed its file, and informed Plaintiffs that they could proceed in court. (DE 6-1 at 1.) Plaintiffs filed this action two days later. (DE 1-1.) SVC had not corrected its AAA status when Plaintiffs demanded arbitration, when AAA declined the demand, when Plaintiffs filed suit, when SVC removed the case, or when SVC filed DE 4. SVC obtained AAA's registration approval only on May 20, 2026. (DE 7-1 at 1–2.)

Considering the totality of those circumstances, the Court concludes that, for purposes of section 3, SVC acted inconsistently with the arbitration right by failing

to remedy the barrier that caused Plaintiffs' properly initiated AAA arbitration to fail before Plaintiffs resorted to litigation. *See Merritt*, 137 F.4th at 1274–76; *Bedgood*, 88 F.4th at 1365–66. SVC's subsequent registration does not retroactively eliminate that default. Section 3 therefore does not require a stay.

**C. SVC Has Not Established Entitlement to an Order Under § 4**

SVC also seeks an affirmative order compelling Plaintiffs to arbitrate. (DE 4 at 4–12.) Plaintiffs contend they did not refuse arbitration: they filed an AAA demand pursuant to paragraph 29, AAA declined the matter because of SVC's noncompliance, and AAA then advised them that the dispute could proceed in court. (DE 6 at 2–4.) SVC responds that circumstances have changed because AAA will now administer disputes under its clause and Plaintiffs have declined to refile their demand. (DE 7 at 2–4.)

Section 4 permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" to seek an order directing arbitration. 9 U.S.C. § 4. As *Bedgood* explains, § 4 therefore contains two "separate, but . . . causally related" conditions: the opposing party must have failed, neglected, or refused to arbitrate, and the party seeking the order must have been aggrieved by that conduct. 88 F.4th at 1366.

Plaintiffs did not initially fail, neglect, or refuse to arbitrate. They selected AAA, one of paragraph 29's expressly authorized administrators, and filed their demand. (DE 1-1 ¶ 18; DE 4-1 at 16.) AAA then declined to administer the proceeding because of SVC's noncompliance. (DE 6-1 at 1.) In analogous circumstances, *Bedgood*

reasoned that because the consumers "attempted to arbitrate," there was no "failure, neglect, or refusal" by which the arbitration proponent could have been "aggrieved." 88 F.4th at 1366.

SVC's later cure does not establish the missing causal connection. *Merritt* addressed that argument after the defendant actually corrected its AAA problem during litigation. The Eleventh Circuit held that the business still failed § 4's second condition because, "[t]o the extent" it was aggrieved, the injury resulted from "its own failure to bring its arbitration clause into compliance with AAA policies" or AAA's resulting decision—not the claimant's conduct. 137 F.4th at 1275. The court rejected the contention that post-filing compliance transformed the claimant's continued litigation into a new refusal sufficient to restore § 4 relief. *Id.* at 1275–76.

The same reasoning applies here. AAA expressly told Plaintiffs that, for their previously declined matter, they "may proceed in the appropriate court," and that AAA would administer the particular matter again only "at the Claimant's sole discretion" if Plaintiffs chose to refile. (DE 6-1 at 1.) Plaintiffs then pursued the court forum AAA had identified. Their decision not to restart the arbitration after SVC's later registration does not erase their prior compliance or make SVC's inability to obtain arbitration attributable to Plaintiffs rather than the impediment that SVC itself created.

Accordingly, SVC has not established the fourth *Adkins* requirement or the statutory conditions for relief under § 4.

### D. Alternative Administrators Do Not Change the Result

SVC emphasizes that paragraph 29 is not an AAA-exclusive provision. The agreement identifies AAA and JAMS, permits the parties to agree on another company or arbitrator, and provides that, "[i]f none of these options is available," a court with jurisdiction will select the Arbitration Administrator or arbitrator. (DE 4 at 9–11; DE 4-1 at 16.) SVC therefore argues that AAA's initial declination did not extinguish Plaintiffs' broader contractual duty to arbitrate and alternatively asks the Court to appoint an arbitrator under § 5. (DE 4 at 9–11.)

The Court agrees with the first premise. AAA's February 23 declination did not invalidate paragraph 29, and the availability of alternative administrators confirms that the agreement to arbitrate survived as a contractual matter. But the existence of alternative contractual avenues does not establish that SVC was free from default under § 3 or that Plaintiffs failed, neglected, or refused to arbitrate within the meaning of § 4. Plaintiffs did what paragraph 29 permitted them to do: they selected AAA and initiated arbitration there.

The Eleventh Circuit's unpublished decision in *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926 (11th Cir. 2019), is instructive on this narrower point. The agreement there likewise permitted arbitration through either JAMS or AAA. After the consumer selected JAMS and the business's noncompliance prevented arbitration from proceeding, the court rejected the argument that the consumer had to start again at AAA. The court explained that the consumer "had a contractual right to choose to arbitrate with JAMS or AAA" and that the agreement did not require her

to select the alternative forum after the first proceeding failed because of the business's conduct. *Id.* at 935 n.3. Although *Freeman* is unpublished and arose in a different procedural setting, its treatment of the multiple-forum provision shows that the abstract availability of JAMS does not itself establish that Plaintiffs refused to arbitrate.

Paragraph 29 likewise does not expressly require a claimant whose arbitration before one authorized administrator is declined because of the opposing party's noncompliance to proceed sequentially through each alternative administrator before relying on the remedies otherwise available. The alternative-forum provisions therefore do not alter the Court's conclusions under §§ 3 and 4.

### E. SVC Has Not Shown a Present Basis for Appointment Under § 5

SVC alternatively asks the Court to appoint an arbitration administrator or arbitrator pursuant to § 5. (DE 4 at 10–11.) Section 5 requires the parties' agreed appointment method to be followed and authorizes judicial appointment when no method is provided, a party fails to avail itself of that method, or "for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators[.]" 9 U.S.C. § 5.

SVC has not established such a present lapse. Paragraph 29 authorizes AAA, JAMS, another administrator selected by agreement, and only if "none of these options is available," judicial selection. (DE 4-1 at 16.) SVC now affirmatively relies on AAA's availability, and AAA has stated that it is prepared to administer consumer disputes under the clause, subject to continued compliance and its retained discretion. (DE 7 at 3–4; DE 7-1 at 2–3.) Nothing in the present record establishes

that JAMS is unavailable either. The contractual condition for judicial selection therefore has not been shown.

Nor does § 5 independently supply the missing requirements for relief under § 4. Section 5 provides a mechanism for resolving a lapse in the selection of an arbitrator; it does not itself establish that Plaintiffs failed, neglected, or refused to arbitrate or that SVC was aggrieved by such conduct. SVC's § 5 request is therefore denied without prejudice.

**F. The Court's Prior *Hoffer* and *Rowley* Orders**

SVC relies on this Court's prior orders in *Hoffer v. Wyndham Vacation Resorts, Inc.*, No. 4:22-cv-01921-JD, 2022 WL 18587633 (D.S.C. Nov. 16, 2022), and *Rowley v. Wyndham Resorts Dev. Corp.*, No. 4:22-cv-01424-JD, 2022 WL 22860455 (D.S.C. Dec. 22, 2022). (DE 4 at 8–9; DE 7 at 4; DE 4-2; DE 4-3.) Both cases involved consumers who first attempted arbitration through AAA, AAA's subsequent refusal to administer because of Wyndham's noncompliance, and Wyndham's later request that the Court compel arbitration.

Those decisions support SVC on more than the arbitration agreement's continued validity. In *Hoffer*, the Court held that the plaintiff's rejection of a proposed consent order and opposition to the motion to compel established a refusal to arbitrate for purposes of the fourth *Adkins* requirement. 2022 WL 18587633, at *2. The Court also held that AAA's declination did not constitute a material breach of the arbitration agreement and separately concluded that Wyndham had not waived arbitration through its litigation conduct. *Id.* at *2–3*. *Rowley* similarly treated the

plaintiff's opposition to the motion to compel as a refusal to arbitrate and rejected her waiver argument. 2022 WL 22860455, at *2–3. At the same time, *Rowley* expressly stated that the Court was "troubled by Defendants' failure to cooperate with Rowley's previous attempt to comply with the arbitration clause," noted that the record contained no evidence concerning efforts to resolve AAA's requirements, and questioned whether § 5 could be invoked to overcome that noncompliance. *Id.* at *3 n.3.

The Court recognizes that its conclusion here differs from *Hoffer* and *Rowley* insofar as those decisions treated a claimant's post-suit opposition to arbitration as sufficient to satisfy § 4 notwithstanding the claimant's earlier unsuccessful effort to arbitrate. Since those decisions, however, the Eleventh Circuit has addressed that precise statutory question in *Bedgood* and *Merritt*. *Bedgood* held that consumers who actually attempted arbitration had not "fail[ed], neglect[ed], or refus[ed]" to arbitrate within § 4 merely because they subsequently litigated after AAA rejected their demands due to the arbitration proponent's noncompliance. 88 F.4th at 1366–67. *Merritt* subsequently applied that reasoning even where the business cured its AAA noncompliance during the litigation, holding that the cure did not transform the claimant's continued litigation into a new refusal sufficient to obtain § 4 relief. 137 F.4th at 1275–76.

The Court also recognizes the Fourth Circuit's unpublished decision in *SZY Holdings, LLC v. Garcia*, No. 23-1305, 2024 WL 3983944 (4th Cir. Aug. 29, 2024). Applying *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), *SZY Holdings* rejected a §

3 default-or-waiver finding where the parties seeking arbitration had delayed filing a formal motion but had consistently asserted their arbitration right throughout the litigation. 2024 WL 3983944, at *2–3. The present ruling does not rest on a finding that SVC waived arbitration through litigation conduct. SVC timely asserted arbitration in this action, and nothing in the record suggests an intentional abandonment of that contractual right. *SZY Holdings*, however, did not involve an arbitral proceeding that had already been commenced and then could not proceed because the arbitration proponent failed to comply with the selected administrator's requirements. It therefore does not resolve the distinct § 3 question addressed in *Bedgood* and *Merritt*.

Neither *Bedgood* nor *Merritt* binds this Court, and binding Fourth Circuit precedent requires enforcement of valid arbitration agreements when the statutory requirements are satisfied. *See, e.g.*, *Meadows*, 132 F.4th at 726; *Mey*, 971 F.3d at 288, 292. But no binding Fourth Circuit decision before the Court addresses the circumstance presented here: a claimant timely invoked an expressly authorized arbitral forum, that forum rejected the proceeding because of the arbitration proponent's noncompliance, and the proponent cured only after litigation began. On those discrete statutory questions, *Bedgood* and *Merritt* provide the closest appellate guidance.

**G. Remaining Motions and Possible Appeal**

An order "refusing a stay of any action under section 3" or "denying a petition under section 4 . . . to order arbitration to proceed" is immediately appealable. 9

U.S.C. § 16(a)(1)(A)–(B). By contrast, § 16 does not independently authorize an interlocutory appeal from an order declining to appoint a substitute arbitrator under § 5. *See Bedgood*, 88 F.4th at 1367.

If SVC appeals the Court's §§ 3 and 4 rulings, further district-court proceedings concerning the merits ordinarily must be stayed while that appeal is pending because the appeal concerns whether the case may proceed in this Court. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740–44 (2023).

For docket-management purposes, the Court therefore continues to defer ruling on the Rule 12(b)(6) branch of DE 4 and on Plaintiffs' Motion for Partial Summary Judgment (DE 10). If no notice of appeal is filed within the time permitted by law, the parties shall file a joint status report within seven days after the appeal period expires stating whether either party believes limited supplemental briefing is necessary before the Court resolves the remaining motions. No additional merits briefing shall be filed absent leave of Court. If an appeal is filed, the Rule 12(b)(6) portion of DE 4 and DE 10 shall remain held in abeyance pending issuance of the appellate mandate or further order of this Court.

## IV. CONCLUSION

The Court does not hold paragraph 29 invalid or conclude that Plaintiffs' claims fall outside its scope. The parties entered into a broad arbitration agreement that encompasses the claims asserted here. The Court holds only that, on the present record and procedural posture, SVC has not established entitlement to the judicial remedies it presently seeks under §§ 3 and 4 of the FAA. Plaintiffs had invoked arbitration through an administrator expressly authorized by paragraph 29; AAA

declined to administer that proceeding because of SVC's noncompliance with its consumer-arbitration requirements; and SVC's subsequent cure does not retroactively alter those events.

For these reasons, the Court finds that subject-matter jurisdiction exists and lifts the prior abeyance as to the arbitration-related portions of DE 4.

Defendant SVC-West, LLC's request to stay this action pursuant to 9 U.S.C. § 3 is DENIED, and its request for an order compelling arbitration under 9 U.S.C. § 4 is DENIED. SVC's alternative request for appointment of an arbitration administrator or arbitrator under 9 U.S.C. § 5 is DENIED WITHOUT PREJUDICE.

The Court continues to DEFER RULING on the Rule 12(b)(6) portion of DE 4 and on Plaintiffs' Motion for Partial Summary Judgment (DE 10). Those matters remain HELD IN ABEYANCE pending expiration of the time to appeal the Court's §§ 3 and 4 rulings, resolution of any such appeal, or further order of the Court.

If no notice of appeal is filed, the parties shall submit the joint status report described above within seven days after the appeal period expires. No additional merits briefing shall be filed absent leave of Court.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 25, 2026